Warden, J.
Eli Parker, the purchaser of the lands in question, died in 1823, intestate, leaving Isaac and Joseph, his sons and heirs. His widow, Rebecca, was married about a year afterward to James Prickett. Of this second marriage of Rebecca, the plaintiff’s lessors were the issue. Before their birth or conception, however, Isaac Parker died intestate, and without issue, himself an infant. In 1833, Joseph Parker died, also intestate, and without issue. Amos Parker, the tenant in possession, is a brother of Eli Parker, the purchaser, and holds all the interests of all the brothers o'f Eli in the lands. He has all the lands in possession.
The half-brothers of Joseph claim the moiety of the lands which he, Joseph, inherited from his brother Isaac.
The statute of 1831, “ regulating descents, and the-distribution of personal estates” (Swan, old ed., note a, 386), was in force when Joseph died. That act provides the following course-of descents, for a case like that before us : That when any person shall die intestate, having title or right to any real estate of inheritance in this-' *396 state, which title shall have come to such intestate by descent, devise, or deed of gift from any ancestor, such estate shall descend or pass in parcenary to his or her kindred in the following course : first, to the children of such intestate, or their legal representatives; second, if there be no children or their legal representatives, the estate shall pass to the brothers and sisters of the intestate who may be of the blood of the ancestor from whom the estate came, or their legal representatives, whether such brothers and sisters be of the whole or the half-blood of the intestate; third, if there be no brothers or sisters of the blood of the ancestor from whom the estate camej or their legal representatives, and if the estate came by deed of gift from an ancestor who may be living, the estate shall ascend to such 396] ancestor; fourth, if the ^ancestor from whom the estate came, be deceased, the estate shall pass to the brothers and sisters of such ancestor, or their legal 'representatives; and for want of such brothers or sisters, or theii’ legal representatives, to the brothers and sisters of the intestate of the half-blood, or their legal representatives, though such brothers and sisters be not of the blood of the ancestor from whom the estate came; fifth, if there be no brothers or sisters of the intestate, or their legal representatives, the estate shall pass to the next of kin to the intestate of the blood of the ancestor from whom the estate came.”
That the word ancestor, as used in this act, is not to be understood as when used in common parlance, is well settled in Ohio. That an uncle of the intestate, from whom the latter inherited, was his ancestor in the sense of a statute like that before us, in this respect, being the amendatory act of 1835, was held in Brewster v. Benedict, 14 Ohio, 385. That a father, who took the estate by deed of gift from his father, was the legal ancestor of his son and heir, not the grandfather from whom the estate came through the father, was held in Curren v. Taylor, 19 Ohio, 36.
It thus appears that the ancestor meant by our statute, is any one from whom the estate is inheritable, and that the ancestor from whom it must, in law, be understood to “ have come to the intestate,” is he from whom it was-immediately inherited.
The policy of the Ohio law in making such an ancestor take the place of the first purchaser of the estate, though a wide departure from the English canons of descent, is neither singular nor-exceptionable. If.it is not so now, it was at one time the policy of several other states; and it is quite reasonable. On this subject the *397, 398 language of Story, J., in Gardner v. Collins, 2 Pet. U. S. 91, deserves notice.
“ It is true, that in a sense, an estate may be said to come by descent, from a remote ancestor, to a person upon whom it has devolved through many intermediate descents. But this, if not loose language, is not that sense which is ordinarily annexed to the term. When an estate is said to have ^descended from A to B, the [397 natural and obvious meaning of the words is, that it is an immediate descent from A to B.”
That the effect of such a construction is to prefer brothers of the half-blood of the intestate to his uncles and aunts, does not strike us as repugnant to any natural sentiment, or opposed to any principle founded in good policy. In some of our sister states, such a preference has been made by statutes directed especially to that end. In our own state, where the estate came by purchase, the husband or wife of the intestate, as well as. the brothers and sisters of the half-blood, now stand before the uncles and aunts. The policy as to ancestral estates is still somewhat different. But enough appears to show that no remote ancestor-has any favorable estimation in the eyes of our law.
It is said, by counsel for defendant, to be “ an utter perversion of language to call a child five or six years old the ‘ ancestor ’ of an elder brother.” We can not see any greater abuse of language in calling a younger brother an ancestor, than in allowing an elder brother or an uncle to be such ancestor. If we were to regard the strict derivation of the word, the objection by counsel to the construction given by our courts to this term might seem well taken; but neither the primary definition nor the legal sense of the word ancestor, agrees with its most popular and most obvious signification. It would never occur to one unversed in the law, and equally unlearned in philology, that an uncle could be called the ancestor of his nephew, or an elder brother pronounced the ancestor of a younger, merely because he went before him in the order of birth. But the Supreme Court of this state, in the case first cited, well apprehended the meaning of our law when it uses the word in question. And we are equally well satisfied that he from whom the estate was immediately inherited is the ancestor, the propisituso, from whom, according to our law, the estate came. This ancestor, as to the moiety claimed in this case, was Isaac Parker.
*It is, however, supposed by the same counsel, that the case [398 *399 of Brewster v. Benedict, although as we have seen it establishes a definition of the word ancestor, from which the conclusion we have announced inevitably follows, is really against the opinion here expressed. And it must be admitted, that the judgment in that case might have been other than it was had the counsel for the complainants there assumed the position taken by plaintiff’s counsel here. The lands there in controversy had been devised by David M. Benedict so as to come to two infant nej)hews, who would have inherited it without the devise. Both these infants died in their infancy without issue. After the death of their mother the father married a second wife, by whom he had issue. If there was even an hour’s difference in the time of the death of the nephews of Benedict, one of them was, according to the construction we have here given to the statute, the ancestor of the survivor, from whom a moiety of the lands came to the latter. Neither court nor counsel notice this difference in the time of death, if there was any; nor does the statement of the case, which I suppose was made by Judge Hitchcock, inform us of the facts in this particular. We can not doubt, however, that there 'was an interval between the deaths. Had the counsel in that case, therefore, assumed the position here taken, the judgment of the court might have been different. Whether the construction of the will would have varied, we do not undertake here to determine. It is enough to say, however, that, without speculation upon the probable reasons of such an omission, the ground was not taken, and the attention of the court was not called to .any such question. For our purposes, the decision is easily understood, and the proposition on which the court founds its opinion is not affected by the oversight in its application. From it necessarily followed the ruling in 19 Ohio, that the ancestor from whom the estate came, was he from whom it was immediately inherited. The judge who laid it'down remained on the bench, and as chief 399] justice agreed to the deduction from it made by Avery, *J., in 19 Ohio. We are too well satisfied of the justice and humanity of the preference given by our laws to the brothers and sisters, whether of the whole or half-blood, of him from whom lands are immediately inherited, over the like relations of a remote ancestor, to disturb the rules established by the cases cited.
Without, therefore, examining whether, within the meaning of our statute, the words “ of the blood ” have their common-law signification or not, and thus passing the question whether the plaint *400 ilf’s lessors were “ of the blood ” of Isaac Parker, we say, that they are entitled, as half-brothers of J oseph Parker, and under the latter part of the fourth clause of the section cited, to that moiety of the lands in the possession of the defendant, which Joseph Parker inherited from Isaac.

Judgment for plaintiff.